UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ELIZABETH MELENDEZ | CIVIL ACTION |
| VERSUS | NO. 20-689 |
| SOUTHERN FIDELITY INSURANCE COMPANY | SECTION M (2) |

## ORDER & REASONS

Before the Court is the motion of defendant Southern Fidelity Insurance Company ("SFIC") *in limine* to exclude certain expert testimony of Michael K. A. Gurtler, Friedrich W. L. Gurtler, P.E., and Adam F. Scott.[1]  Plaintiff Elizabeth Melendez opposes the motion.[2]  Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons granting the motion in part and denying it in part.

## I.    BACKGROUND

This case arises from an insurance dispute.  Melendez alleges that she owns property in Houma, Louisiana, which is covered by SFIC insurance policies protecting against wind and water.[3]  In 2011, the property allegedly first had foundation issues caused by wind, which gave rise to an insurance claim that was paid in part by SFIC.[4]  Again, in 2014, the property experienced foundation issues, but this time SFIC denied coverage based on the conclusions of its contracted independent adjuster that the issues appeared to be caused by events not covered by the policy (*e.g.*, earth movement, settling, and faulty or defective workmanship or materials).[5]

---

[1] R. Doc. 13.
[2] R. Doc. 19.
[3] R. Doc. 1-4 at 4.
[4] *Id.*  The relevant policy number was LSH 0008428 01 17 which had an effective date of July 15, 2010, and a policy period through July 15, 2011.  R. Docs. 10-1 at 3; 10-6 at 1.
[5] R. Docs. 1-4 at 4; 14-1 at 2-3.  The relevant policy number was LSH 0008428 04 17 which had an effective date of July 15, 2013, and a policy period through July 15, 2014.  R. Docs. 10-1 at 3; 10-7 at 1.

In 2019, Hurricane Barry allegedly caused the property to have foundation issues, and the present case was filed as a result of SFIC's denial of coverage for wind damage to the property.[6] Melendez alleges that SFIC rejected her claim because it concluded that the damage stemmed from the 2014 foundation issues.[7]

On January 22, 2020, Michael and Friedrich Gurtler of Gurtler Bros. Consultants, Inc. (the "Gurtlers") issued their report as to the cause of the foundation damages.[8]  They concluded, "[i]n our opinion, the failure of the foundation resulting [in] the shift of the residence toward the left side of this property was more likely than not caused by Hurricane Barry.  Based on the direction of travel of Hurricane Barry, the right wall of this property would have been exposed to the highest winds from this storm."[9]

After the filing of this lawsuit, the property collapsed on April 18, 2020.[10]  SFIC denied coverage for the resulting additional claims.[11]  On April 19, 2020, Adam Scott of Cutlass Claims Consultants, LLC inspected the property and later issued his own report with an estimate of damages based on the conclusion that Hurricane Barry was the reason for the collapse.[12]

## II.   PENDING MOTION

SFIC attacks all three experts by questioning the evidentiary bases for their opinions and asserting that their methodology is insufficiently explained.  SFIC argues that the Gurtlers' testimony should be excluded because their report is not based on facts and data, such as the actual speed of the wind during the hurricane, but rather unsubstantiated and conclusory factual

---

[6] R. Doc. 1-4 at 4.
[7] *Id.*
[8] R. Doc. 13-1 at 2-3.
[9] R. Docs. 19 at 1; 19-1 at 28.
[10] R. Doc. 14-1 at 3.
[11] *Id.* at 4.
[12] R. Docs. 13-1 at 3; 13-6 at 2.

statements.[13]   Further, it asserts that the Gurtlers use unreliable methodology by failing to account for alternative causes such as earth movement and poor workmanship.[14]   In regard to Scott, SFIC argues that he does not have the requisite experience or credentials to make an expert conclusion as to the cause of the building's collapse.[15]   SFIC also alleges that Scott's opinion has the same fatal flaw as the Gurtlers' – namely a failure to base his opinion on reliable facts and evidence.[16]

In opposition, Melendez argues that, if anything, SFIC's objections go to the weight of the evidence, not its admissibility.   She argues that the Gurtler brothers are experienced engineers who can testify as to the cause of the building's foundation problems and subsequent collapse.[17]   In preparing their report, the Gurtlers personally inspected the property, interviewed witnesses, and reviewed documents about prior claims and repairs.[18]   Melendez also defends Scott's expertise and argues that his appraisal experience is sufficient to allow him to testify as to the cause of the collapse.[19]

## III.     LAW & ANALYSIS

### A. *Daubert* Standard

A district court has discretion to admit or exclude expert testimony under the Federal Rules of Evidence.   *General Elec. Co. v. Joiner*, 522 U.S. 136, 139 (1997).   In *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993), the Supreme Court held that Rule 702 requires a district court to act as a gatekeeper to ensure that "any and all scientific testimony or

---

[13] R. Doc. 13-1 at 5-6.
[14] *Id.* at 6-8.
[15] *Id.* at 8-9.
[16] *Id.* at 9-10.
[17] R. Doc. 19 at 6-7.
[18] *Id.* at 7-8.
[19] *Id.* at 11-12.

evidence admitted is not only relevant, but reliable."  Rule 702 of the Federal Rules of Evidence provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

The reliability inquiry requires a court to assess whether the reasoning or methodology underlying the expert's testimony is valid.  *See Daubert*, 509 U.S. at 592-93.  In *Daubert*, the Supreme Court listed several non-exclusive factors for a court to consider in assessing reliability: (1) whether the theory has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) the general acceptance of the methodology in the scientific community.  *Id.* at 593-95.  However, a court's evaluation of the reliability of expert testimony is flexible because "[t]he factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony."  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) (quotations omitted).  In sum, the district court must ensure "that an expert, whether basing testimony upon professional studies or personal experiences, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Id.* at 152.  The party offering the testimony must establish its reliability by a preponderance of the evidence.  *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

Next, the district court must determine whether the expert's reasoning or methodology "fits" the facts of the case and whether it will assist the trier of fact to understand the evidence, *i.e.*, whether it is relevant. *Daubert*, 509 U.S. at 591. An expert's testimony is not relevant and may be excluded if it is directed to an issue that is "well within the common sense understanding of jurors and requires no expert testimony." *Vogler v. Blackmore*, 352 F.3d 150, 155 (5th Cir. 2003). Further, an expert cannot make "legal conclusions reserved for the court," credit or discredit witness testimony, or "otherwise make factual determinations reserved for the trier of fact." *Highland Cap. Mgmt., L.P. v. Bank of Am., N.A.*, 574 F. App'x 486, 491 (5th Cir. 2014).

Rule 702 also requires that an expert be properly qualified. Generally, if there is some reasonable indication of qualifications, the district court may admit the expert's testimony, and then the expert's qualifications become an issue for the trier of fact. *Rushing v. Kan. City S. Ry. Co.*, 185 F.3d 496, 507 (5th Cir. 1999), *superseded in part by statute on other grounds as noted in Lester v. Wells Fargo Bank, N.A.*, 805 F. App'x 288, 291 (5th Cir. 2020). A witness qualified as an expert is not strictly confined to his area or practice but may testify regarding related applications; a lack of specialization goes to the weight, not the admissibility of the opinion. *Cedar Lodge Plantation, L.L.C. v. CSHV Fairway View I, L.L.C.*, 753 F. App'x 191, 195-96 (5th Cir. 2018).

The facts, data, and sources used in an expert's opinion are generally considered by the jury in weighing the evidence, but "in some cases 'the source upon which an expert's opinion relies is of such little weight that the jury should not be permitted to receive that opinion.'" *Jacked Up, L.L.C. v. Sara Lee Corp.*, 807 F. App'x 344, 348 (5th Cir. 2020) (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)). As the gatekeeper, a district judge must "extract evidence tainted by farce or fiction. Expert evidence based on a fictitious set of facts is just as unreliable as evidence based upon no research at all." *Guillory v. Domtar Indus. Inc.*, 95

F.3d 1320, 1331 (5th Cir. 1996).  "Generally, the fact-finder is entitled to hear an expert's testimony and decide whether the predicate facts on which the expert relied are accurate.  At the same time, however, expert testimony that relies on completely unsubstantiated factual assertions is inadmissible."  *Moore v. Int'l Paint, L.L.C.*, 547 F. App'x 513, 515 (5th Cir. 2013) (internal quotation marks, alterations, and citations omitted).  Ultimately, the expert must "'bring to the jury more than the lawyers can offer in argument.'"  *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992) (quoting *In re Air Crash Disaster at New Orleans, La.*, 795 F.2d 1230, 1233 (5th Cir. 1986)).

## B. Analysis

### 1. Michael and Friedrich Gurtler

Michael Gurtler is the president of Gurtler Bros. Consultants, Inc., which he founded in 1995.[20]  He holds a bachelor of science degree in civil engineering from Tulane University and is licensed in Louisiana as a general contractor and certified as a thermographer and moisture management professional.[21]  Friedrich Gurtler is the vice-president of the company and also holds a civil engineering degree from Tulane.[22]  He is licensed in Louisiana as a professional engineer and home inspector.[23]  Both brothers have testified as experts in state and federal court.[24]  SFIC does not question the expertise of the Gurtlers but does take issue with the facts and data upon which they rely.

In preparation for their report, the Gurtlers inspected the inside and outside of the property and took photographs, interviewed Melendez, found a Google maps photograph of the property from April 2011, and analyzed a building permit issued on September 14, 2016,

---

[20] R. Doc. 19-1 at 31.
[21] *Id.* at 30.
[22] *Id.* at 49.
[23] *Id.*
[24] *Id.* at 32-48, 51-55.

allowing Allridge Services to relevel the property.[25]   SFIC argues that the Gurtlers made no attempt to determine essential facts such as the actual wind speeds affecting the property during Hurricane Barry or the complete history of repairs of the property.[26]   Although the Gurtlers may not rely on as holistic a picture as SFIC would prefer, their facts and data are not rooted in "farce or fiction." *Guillory*, 95 F.3d at 1331.   Inspections of the property and an interview of its owner are reasonable factual bases for reports of this nature.   Any purported weaknesses in due diligence or research can be highlighted for the jury in cross-examination.

SFIC next argues that the Gurtlers base their opinions on unreliable and improperly applied methodology.[27]   It contends that they do not "show their work" nor do they rule out other potential causes of the damage including "earth movement and faulty workmanship."[28]   This is not an obvious case for excluding an expert where, for example, the expert acknowledged he did not investigate whether a hurricane actually caused the damages.   *See, e.g., Bias v. Standard Guar. Ins. Co.*, 385 F. App'x 398, 400 (5th Cir. 2010) (holding the district court was correct to exclude a purported expert's testimony when his report failed to isolate damage caused by the hurricane and he admitted he did not investigate whether the hurricane actually caused the damage).   However, the failure to rebut every other possible theory of causation does not automatically invalidate an expert's report.   *See Gaffney v. State Farm Fire & Cas. Co.*, 2009 WL 3188421, at *3-4 (E.D. La. July 15, 2009) (admitting expert even though he failed to consider alternative causes, such as pre-existing soil conditions, as the reason why a house was knocked off its foundation during a hurricane).

---

[25] R. Doc. 13-5 at 2-26.
[26] R. Doc. 13-1 at 5-6.
[27] *Id.* at 6-8.
[28] *Id.* at 7-8.

Here, the Gurtlers rely on their expertise (including in foundation failure analysis), experience (including thousands of building inspections), and sources (including their inspection of the property) to reach the conclusion that the damage resulted from Hurricane Barry.[29]  They observe that "[t]he generally uniform tilting of the foundation piers to the left also is indicative of a single precipitating event rather than typical age-related differential foundation settlements."[30]  Although they do not explicitly address the quality of any earlier repairs or earth movement, the Gurtlers do provide a reason why they believe the damage was caused by a single event as opposed to ongoing deterioration.  Rather than serving as grounds for excluding the Gurtlers' testimony, SFIC's arguments and evidence about alternative causes are more properly presented to the jurors who can form their own ultimate conclusions.

## 2. Adam Scott

Adam Scott has extensive experience in interior design with four years of experience as an independent insurance adjuster.[31]  He has testified in state court twice before and claims to be an expert in "insurance adjusting and construction."[32]  In his report, Scott provides a detailed estimate of damages for the property,[33] but he only provides the following paragraph on causation:

> Based on neighbors [sic] statements the building had previously had foundation work completed and after Hurricane Barry, the neighbors noted that the building was leaning towards their property.  Review of the previous losses, policy and invoices shows that the home was previously leaning but the issue had been rectified.  Further information provided by Gurtler Bros. Consultants, Inc. found that the building showed that the piers were leaning in uniform direction and pitch, indicating a single causative event rather than long term or typical age-related settlement.  Investigation with the insured, engineering reports and the neighbors [sic] statements indicates and coincides with the position that the house was not leaning prior to the storm and that the storm was the cause of the leaning

---

[29] R. Doc. 13-5 at 26.
[30] *Id.*
[31] R. Doc. 19-2 at 40-41.
[32] *Id.* at 42.
[33] *Id.* at 5-36.

8

which lead [sic] to the collapse, not earth movement, settling or faulty construction.[34]

SFIC does not object to Scott's expertise in operating pricing software to offer an opinion on the cost of rebuilding the property, but it argues that he does not have the proper engineering or other relevant background to opine as to the cause of the collapse.[35]   Just as it did for the Gurtlers, SFIC again objects to the bases of Scott's facts and data and his methodology.[36]   Scott did not provide copies of the documents he purported to analyze that showed how the previous foundation issues were "rectified."   Rather than providing an independent analysis of causation, it appears that he relies extensively, if not exclusively, on the investigation of the Gurtler brothers to conclude that Hurricane Barry was the cause of the collapse and does not disclose any different engineering reports he says he used to help reach that conclusion.   Thus, on the question of causation, "[t]he report reads more like a closing statement delivered by a trial attorney than a technical analysis provided by an expert witness."   *Imperial Trading Co. v. Travelers Prop. Cas. Co. of Am.*, 654 F. Supp. 2d 518, 521 (E.D. La. 2009).   Moreover, because Scott's observations about causation rely so heavily on the Gurtlers' report, they are cumulative and excludable for this additional reason.   Since Scott's conclusions as to causation will not help the trier of fact, his testimony must be limited to his estimate as it bears on the question of damages.

---

[34] *Id.* at 38.
[35] R. Doc. 13-1 at 8-9.
[36] *Id.* at 9-10.

**IV.      CONCLUSION**

Accordingly, for the foregoing reasons,

IT IS ORDERED that the motion of defendant Southern Fidelity Insurance Company *in limine* to exclude certain expert testimony (R. Doc. 13) is GRANTED IN PART AND DENIED IN PART.  Adam Scott is not permitted to testify as to causation of the building collapse, but he may testify as to his estimate of the cost to rebuild the property as it relates to damages.  The Gurtlers will be permitted to testify.

New Orleans, Louisiana, this 23rd day of November, 2020.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE