UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ELIZABETH MELENDEZ | CIVIL ACTION |
| VERSUS | NO. 20-689 |
| SOUTHERN FIDELITY INSURANCE COMPANY | SECTION M (2) |

### ORDER & REASONS

Before the Court are the motions of defendant Southern Fidelity Insurance Company ("SFIC") for partial summary judgment.[1]  Plaintiff Elizabeth Melendez opposes both motions.[2] SFIC replies in further support of its original motion.[3]  Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons dismissing all claims, including bad faith claims, related to the 2011 and 2014 incidents as having prescribed, but declining to dismiss bad faith claims related to the 2019 incident given the existence of unresolved issues of material fact.

**I.  BACKGROUND**

This case arises from an insurance dispute.  Melendez alleges that she owns property in Houma, Louisiana, which is covered by SFIC insurance policies protecting against wind and water.[4]  On March 5, 2011, Melendez reported that a windstorm caused her house to have foundation issues, a claim that was paid in part by SFIC.[5]  On July 14, 2011, SFIC's assigned independent adjuster, Carrol Smith of Trinity Insurance Services, created an estimate of repairs

---

[1] R. Docs. 10, 14.
[2] R. Docs. 12, 18.
[3] R. Doc. 17.
[4] R. Docs. 1-4 at 4; 10-1 at 3.
[5] R. Docs. 1-4 at 4; 14-1 at 2.  The relevant policy number was LSH 0008428 01 17 which had an effective date of July 15, 2010, and a policy period through July 15, 2011.  R. Docs. 10-1 at 3; 10-6 at 1.

which included a $10,384 bid from Coastal Shoring, LLC ("Coastal Shoring") to straighten the house's piers.[6] In connection with the Coastal Shoring bid, SFIC initially paid $7,307.20 to Melendez representing the amount of the bid less the cost of depreciation and the policy's $1,000 deductible.[7] On April 6, 2012, SFIC then paid the remaining $2,076.80 representing recoverable depreciation for the claim.[8] Melendez allegedly hired Coastal Shoring to complete the contracted work.[9] She did not dispute the amount of the loss at that time,[10] but she now argues that SFIC did not pay for additional losses including damages to her house's interior walls and flooring.[11] In her report, Trinity's Smith did not include any calculation of damages for the interior of the house.[12]

On May 19, 2014, the property again experienced foundation issues which caused the house to lean.[13] According to SFIC, Smith, now of U.S. Cat Adjusters, determined the lean "appeared to be due to causes not covered by the policy, such as earth movement, settling, and faulty or defective workmanship or materials."[14] As a result, SFIC denied coverage.[15] Melendez argues that Smith actually concluded that the "claim appears to be the same type of damage as [the 2011] claim."[16] Regardless, Melendez paid for the repairs and hired Allridge Services to relevel her property.[17]

---

[6] R. Docs. 14-1 at 2; 14-5 at 3; 18 at 1-2.
[7] R. Docs. 14-1 at 2; 14-5 at 1; 18 at 2.
[8] R. Docs. 14-1 at 2; 14-5 at 1; 18 at 2.
[9] R. Docs. 18 at 9; 18-2 at 2 (affidavit of Melendez).
[10] R. Doc. 14-1 at 2, 9.
[11] R. Doc. 18 at 2, 9.
[12] R. Doc. 18-3 at 1.
[13] R. Docs. 1-4 at 4; 10-1 at 2.
[14] R. Docs. 14-1 at 2; 18 at 2.
[15] R. Docs. 1-4 at 4; 14-1 at 3.  The relevant policy number was LSH 0008428 04 17 which had an effective date of July 15, 2013, and a policy period through July 15, 2014.  R. Docs. 10-1 at 3; 10-7 at 1.
[16] R. Doc. 18 at 2-3.
[17] R. Docs. 18 at 3; 18-2 at 2-3.

On July 18, 2019, Hurricane Barry allegedly caused the house to lean again.[18] The present case was filed in the wake of SFIC's denial of coverage for wind damage to the property as a result of the hurricane.[19] SFIC again relied on its independent adjuster, this time Daniel Gullbeau of Associated Adjusters Network, who concluded that Hurricane Barry was not the cause of the damage.[20] Melendez asserts that Gullbeau actually concluded that the storm caused the piers to shift.[21]

After the filing of this lawsuit, the property collapsed on April 18, 2020.[22] SFIC assigned engineer William Janowsky of U.S. Forensic to inspect the property, and he concluded in his June 3, 2020 report that the collapse was "the result of a long-term and progressive failure of the foundation system of the building."[23] SFIC denied coverage for the resulting additional claims.[24]

## II.   PENDING MOTION

In its first motion for partial summary judgment, SFIC argues that any claims related to property damage from the foundation issues reported in 2011 and 2014 have prescribed. Specifically, it argues that the 2011 and 2014 policies specify their own prescriptive periods providing that "[n]o action can be brought against us 24 months after a loss."[25] It asserts that this provision is allowed under Louisiana law, specifically La. R.S. 22:868(B), which restricts insurance contracts from limiting the time period to bring an action against an insurer to any period shorter than 24 months from the inception of loss when the claim is a first-party claim.[26] In its second motion for partial summary judgment, SFIC argues that Melendez cannot

---

[18] R. Docs. 1-4 at 4; 14-1 at 2.
[19] R. Doc. 1-4 at 4.
[20] R. Docs. 14-1 at 3; 18 at 4.
[21] R. Doc. 18 at 4.
[22] R. Docs. 14-1 at 3; 18 at 5.
[23] R. Docs. 14-1 at 3-4; 18 at 6.
[24] R. Docs. 14-1 at 4; 18 at 6.
[25] R. Docs. 10-1 at 3; 10-6 at 27; 10-7 at 27.
[26] R. Docs. 10-1 at 6.

3

successfully bring claims for statutory penalties and attorneys' fees under La. R.S. 22:1973 and 22:1892 because she cannot prove that SFIC acted in an arbitrary or capricious manner.[27]

In opposition, Melendez argues that the proper prescriptive period for any claim for SFIC's violations of Louisiana's bad faith insurance statutes is ten years because it is a contract claim.[28] Therefore, she concludes, her bad faith claims arising from the 2011 and 2014 insurance claims are brought well within the applicable prescriptive period.[29]  Further, she argues that the bad faith claims have merit as SFIC underpaid or failed to pay her within 30 or 60 days of adequate proof of loss for each of her 2011, 2014, and 2019 claims.[30]  Melendez asserts that this amounts to behavior that is "arbitrary, capricious, and without probable cause."[31]  In the alternative, she argues that bad faith is a factual determination that is ill-suited for summary judgment.[32]

### III.   LAW & ANALYSIS

#### A. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).  "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Id*.

---

[27] R. Doc. 14-1 at 9-12.
[28] R. Doc. 12 at 2-5.
[29] *Id.*
[30] R. Doc. 18 at 9-12.
[31] *Id.* at 12-16.
[32] *Id.* at 16-17.

A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id*. at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id*. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). The substantive law identifies which facts are material. *Id*. Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *E.E.O.C. v. Simbaki, Ltd*., 767 F.3d 475, 481 (5th Cir. 2014). Unsubstantiated assertions, conclusory allegations, and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994); *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary judgment motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co*., 530 F.3d 395, 398-99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine issue of material fact, the

nonmovant must articulate specific facts showing a genuine issue and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A) & (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(1)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

**B. Analysis**

**1. Under Louisiana law, Melendez's 2011 and 2014 claims have prescribed.**

A federal court sitting in diversity applies state substantive law, *see Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938), including "state statutes of limitations and related state law governing tolling of the limitation period." *Hensgens v. Deere & Co.*, 869 F.2d 879, 880 (5th Cir. 1989). Under Louisiana law, liberative prescription is similar to the common-law concept of statute of limitations. It "is a mode of barring of actions as a result of inaction for a period of time." La. Civ. Code. art. 3447. Prescription can be interrupted "when the obligee commences action against the obligor, in a court of competent jurisdiction and venue." *Id.* art. 3462.

Initially, it should be noted that there is a bit of confusion between the parties as to the basis of the claims Melendez brings in connection with the 2011 and 2014 incidents. Melendez states in her opposition: "A review of Plaintiff's Petition for Damages demonstrates that Plaintiff has not made any claims for breach of contract related to her 2011 or 2014 losses. Rather, Plaintiff's sole claims related to those losses are for SFIC's violations of Louisiana's bad faith

statutes, La. R.S. §§ 22:1892 and 22:1973."[33]  However, in her complaint, she alleges that "SFIC is liable to Petitioner [for] [b]ad faith claims adjusting practices, including, but not limited to, failing to adequately adjust Petitioner's 2011, 2014, and 2019 claims; wrongly denying Petitioner's 2014 and 2019 claims; [and] failure to pay timely for damages SFIC knew, or should have known existed at the time of the original adjustment of the 2011, 2014, and 2019 claims."[34] Based on Melendez's assertion that, with respect to the 2011 and 2014 incidents, she is only pursuing bad faith claims, to the extent her complaint can be read to assert any other claims arising from the 2011 and 2014 incidents, they are dismissed based on Melendez's judicial confession in her opposition to the motion.[35]

Melendez argues that her bad faith claims for SFIC's handling of her 2011 and 2014 insurance claims are subject to a ten-year prescriptive period.[36]  In Louisiana, the prescriptive period for delictual, or tort, actions is one year while the period for personal actions, including contractual actions, is ten years.  La. Civ. Code arts. 3492, 3499.  There was previously a split in the law as to whether bad faith insurance claims should be considered delictual or contractual.[37] The Louisiana supreme court recently clarified that "[b]ecause we find an insurer's bad faith is a breach of its contractual obligation and fiduciary duty, we hold the insured's cause of action is personal and subject to a ten-year prescriptive period."  *Smith v. Citadel Ins. Co.*, 285 So. 3d 1062, 1069 (La. 2019).  In *Smith*, La. R.S. 22:1973 provided the basis for the bad faith insurance claims stemming from an automobile accident.  *Id.* at 1064.  The *Smith* court explained that the

---

[33] R. Doc. 12 at 1.
[34] R. Doc. 1-4 at 8.
[35] However, even in the absence of Melendez's judicial confession, however, any claims connected to the 2011 and 2014 incidents should be dismissed as having prescribed, as will be explained below relative to her bad faith claims.
[36] R. Doc. 12 at 2-6.
[37] Under Louisiana law, "the classical distinction between damages *ex contractu* and damages *ex delicto* is that the former flow from the breach of a special obligation contractually assumed by the obligor, whereas the latter

duty of good faith owed by the insurer to the insured "is an outgrowth of the contractual and fiduciary relationship between the insured and the insurer, and the duty of good faith and fair dealing emanates from the contract between the parties." *Id.* at 1069.  Simply put, without the contract, there would be no duty of good faith. *Id.*  Therefore, the court held that the ten-year prescriptive period applies to bad faith claims. *Id.*

In opposition, SFIC argues that *Smith* is inapposite because the parties here are bound by their insurance policy's restriction that "[n]o action can be brought against us [that is, SFIC] 24 months after a loss."[38]  Under Louisiana law, parties can contractually shorten a prescriptive period.  The Louisiana supreme court has held that "[i]n the absence of a statutory prohibition, a clause in an insurance policy fixing a reasonable time to institute suit is valid." *Taranto v. La. Citizens Prop. Ins. Corp.*, 62 So. 3d 721, 728 (La. 2011) (emphasis omitted); *see also La. Health Serv. & Indem. Co. v. McNamara*, 561 So. 2d 712, 719 (La. 1990) ("While prescriptive periods may not be lengthened as a matter of public policy, such periods may be shortened upon agreement of the parties.") (citations omitted); *Noland v. Sun Life Assurance Co.*, 252 F.3d 436, 2001 WL 360775, at *1 (5th Cir. Mar. 9, 2001) ("[U]nder Louisiana law, the parties to an insurance policy may contractually agree to limit the period within which suit must be filed, [and] that such a contractual period of prescription is valid so long as it does not contravene a state statute or public policy … ."); *Rochon v. Equitable Life Ins. Soc.*, 2009 WL 5215963, at *2 (E.D. La. Dec. 29, 2009) ("In Louisiana, parties are generally permitted to contractually shorten the applicable prescriptive period, if such limitation does not contravene a state statute or public policy."); *Sasol Wax Ams., Inc. v. Hayes/Dockside, Inc.*, 2008 WL 2067007, at *3 (E.D. La. May

---

flow from the violation of a general duty owed to all persons." *In re Settoon Towing, L.L.C.*, 720 F.3d 268, 284 (5th Cir. 2013) (internal quotation marks and citations omitted).

[38] R. Docs. 10-6 at 27; 10-7 at 27.

14, 2008) ("While Louisiana law prohibits agreements to extend the period for prescription, there is no prohibition to agreements to shorten the period.").

In this case, the two-year period defined in the insurance policy within which to bring suits is controlling. Because Melendez did not bring suit within two years of the 2011 and 2014 incidents, any claims she had arising from SFIC's handling of her insurance claims in 2011 and 2014 have prescribed. *Smith* did not turn on the existence of an insurance policy provision that contractually shortened the applicable prescriptive period, so its holding does not control this case. The facts here are much more similar to *Taranto* where a contractual one-year period of prescription within the policy was held to be binding, than they are to *Smith* where the general ten-year prescriptive period for breach-of-contract claims was applied in the absence of any policy provision shortening the period. As the *Taranto* court explained, insurers "are entitled to limit their liability and to impose and enforce reasonable conditions upon the policy obligations they contractually assume." 62 So. 3d at 728. Such policy provisions "relieve the parties from both the general limitation statutes and their exceptions unless they are precluded by statute or public policy, or are unreasonable or unreasonably short." *Id.* (quotation marks and citation omitted). SFIC insists that far from being precluded by statute, the policy's 24-month filing requirement has a statutory basis in La. R.S. 22:868(B) and 22:1311.[39] Because the parties' contractual period of prescription is not "precluded by statute," but rather has statutory support,

---

[39] Section 868(B) provides that "[n]o insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state … shall contain any condition, stipulation, or agreement limiting right of action against the insurer to a period of less than twenty-four months next after the inception of the loss when the claim is a first-party claim … ." La. R.S. 22:868(B). The standard fire policy in § 1311 provides that "[n]o suit or action on this policy for the recovery of any first-party claim shall be sustainable in any court of law or equity … unless commenced within twenty-four months next after the inception of the loss." La. R.S. 22:1311. While SFIC's policy can be read to bar all actions, not just first-party actions as outlined in both statutes, the difference is immaterial in this case where Melendez is bringing a first-party claim. The Court does not reach SFIC's contention that § 1311 provides a two-year prescriptive period for Melendez's claims independent from the policy language.

9

the 24-month prescriptive period applies and SFIC is relieved from the "general limitation statute" of 10 years for personal actions. *Taranto*, 62 So. 3d at 728. Therefore, all of Melendez's claims, including any bad faith claims, related to the 2011 and 2014 incidents have prescribed.

### 2. Bad faith claims connected to the 2019 loss are not dismissed because there are genuine issues of material fact.

"In order to establish a cause of action for penalties and/or attorney fees and costs under [La. R.S. 22:1892, formerly] La. R.S. 22:658, a claimant must show that (1) an insurer has received satisfactory proof of loss, (2) the insurer failed to tender payment within thirty days of receipt thereof, and (3) the insurer's failure to pay is arbitrary, capricious or without probable cause." *Guillory v. Lee*, 16 So. 3d 1104, 1126 (La. 2009). Similarly, La. R.S. 22:1973 authorizes an award of penalties when an insurer's failure to pay a claim within 60 days is "arbitrary, capricious, or without probable cause." La. R.S. 22:1973(B)(5). The prohibited conduct in each statute is virtually identical with the primary difference being a 30- or 60- day period for payment of claims. *Calogero v. Safeway Ins. Co.*, 753 So. 2d 170, 174 (La. 2000).

"The phrase 'arbitrary, capricious, or without probable cause' is synonymous with 'vexatious,' and a 'vexatious refusal to pay' means 'unjustified, without reasonable or probable cause or excuse.'" *La. Bag Co. v. Audubon Indem. Co.*, 999 So. 2d 1104, 1114 (La. 2008) (quoting *Reed v. State Farm Mut. Auto. Ins., Co.*, 857 So. 2d 1012, 1021 (La. 2003)). "[A]n insurer must pay any undisputed amount over which reasonable minds could not differ." *Dupree v. Lafayette Ins. Co.*, 51 So. 3d 673, 698 (La. 2010). "[W]hen there is a 'reasonable and legitimate question as to the extent and causation of a claim, bad faith should not be inferred from an insurer's failure to pay within the statutory time limits when such reasonable doubts exist.'" *La. Bag*, 999 So. 2d at 1114 (quoting *Reed*, 857 So. 2d at 1021); *see also Kodrin v. State*

10

*Farm Fire & Cas. Co.*, 314 F. App'x 671, 679 (5th Cir. 2009) ("An insurer does not act arbitrarily or capriciously when its refusal to pay a claim is based on a genuine dispute over coverage or the amount of the loss.").

"An insurer's conduct depends on the facts known to the insurer at the time of its action … ." *La. Bag*, 999 So. 2d at 1114. "When the insured claims penalties for refusal to pay a claim timely, the inquiry usually focuses on whether the insurer acted reasonably in its adjustment of the claim based on the facts known or that should have been known by the insurer. Normally, the reasonableness of the insurer's claims handling will be a factual issue, and cases involving this issue will be fact specific." 15 WILLIAM SHELBY MCKENZIE & H. ALSTON JOHNSON, III, LA. CIV. L. TREATISE: INSURANCE LAW AND PRACTICE § 11:15 (4th ed. 2020). Here, there are genuine issues of material fact regarding what SFIC knew at the time of its claims-handling decisions. The parties provide different interpretations of SFIC's adjustment report as to what it says was the actual cause of the damage. Further, a sifting of the facts forming the basis of Melendez's two expert reports and whether Melendez provided to the insurer documentation of repairs to her house's foundation may also be required to sort out what SFIC knew. Therefore, at present, genuine issues of material fact preclude summary judgment on Melendez's bad faith claims related to the 2019 loss.

## IV.   CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that the motion of defendant Southern Fidelity Insurance Company for partial summary judgment (R. Doc. 10) is GRANTED and all of Elizabeth Melendez's claims related to the 2011 and 2014 incidents, having prescribed, are dismissed with prejudice.

IT IS FURTHER ORDERED that the motion of Southern Fidelity Insurance Company for partial summary judgment (R. Doc. 14), which is directed in pertinent part to Melendez's bad

faith claims related to the 2019 incident, is DENIED because genuine issues of material fact persist.

New Orleans, Louisiana, this 25th day of November, 2020.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE